**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

MICHAEL COUSIN,

    Appellant,

  v.

DEPARTMENT OF HOMELAND
  SECURITY,

    Agency.

DOCKET NUMBER
DC-0752-13-0261-I-2

DATE: July 24, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Ariel E. Solomon</u>, Esquire, Albany, New York, for the appellant.

<u>Carollyn, D. Jackson</u>, <u>Frislanda S. Goldfeder</u>, and <u>Megan Z. Snyder</u>,
  Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1   The appellant has filed a petition for review of the initial decision, which sustained his removal for inability to perform the duties of his position. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. However, we MODIFY the administrative judge's analysis of the appellant's disability discrimination claim and his credibility finding regarding a statement that the appellant made to his supervisor. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2    The appellant was a GS-1895-13 Customs and Border Protection Officer (Program Manager) in Reston, Virginia. *Cousin v. Department of Homeland Security*, MSPB Docket No. DC-0752-13-0261-I-1, Initial Appeal File (I-1 IAF), Tab 6 at 15. In that position, the appellant was required to carry a firearm and was subject to medical standards, including psychological standards. *Id*. at 184, 218-19, 233-52; *Classification & Qualifications, General Schedule Qualification Standards*, Customs and Border Protection series, 1895, http://www.opm.gov/policy-data-oversight/classification-qualifications/general-schedule-qualification-standards/1800/customs-and-border-protection-series-1895/ (last visited June 18, 2015).

¶3    On February 2, 2012, the agency instructed the appellant to report for a fitness-for-duty examination on the basis that, on January 18, 2012, he informed

his supervisor that he was contemplating suicide, that he was unhappy with his work, and that he felt he was of no value to the agency.[2] I-1 IAF, Tab 6 at 175, 206-08. The appellant reported to the examination as instructed. When the examining physician failed to uncover a medical condition to explain the appellant's behavior, he recommended a psychiatric evaluation. *Id*. at 188-90. The appellant also reported to that examination as instructed and was evaluated by Dr. Richard Blanks. I-1 IAF, Tab 6 at 188, Tab 9 at 27-36. Dr. Blanks interviewed the appellant and administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). I-1 IAF, Tab 9 at 28. Based on the interview and a review of the appellant's medical history, position description, and a summary of the case, as well as the results of the MMPI-2 as interpreted by Dr. Richard Frederick, Dr. Blanks issued a report regarding the appellant's fitness for duty. *Id*. at 27-36. In particular, he found that the appellant met the criteria for major depressive disorder and presented a danger to himself or others. *Id*. at 34-35. The report was reviewed by Dr. Paul Prunier, a consultant psychiatrist for the agency. *Id*. at 24-25. Dr. Prunier concurred with Dr. Blanks and opined that the appellant was psychiatrically not fit for duty. *Id*. at 8, 16, 23, 25.

¶4      The agency proposed the appellant's removal based on a charge of inability to perform the duties of his position. I-1 IAF, Tab 6 at 175-78. The agency also identified two vacant lower-graded positions for which the appellant was qualified within the local commuting area.[3] *Id*. at 28-29, 53. The agency offered the appellant either position, but he declined the offer. *Id*. at 22, 28-29. The agency removed him from service effective December 15, 2012. *Id*. at 15-20.

¶5      The appellant filed a Board appeal and raised a claim of disability discrimination. I-1 IAF, Tab 1 at 4-7. After a hearing, the administrative judge

---

[2] The agency also confiscated the appellant's service weapon and suspended his security clearance. I-1 IAF, Tab 6 at 206.

[3] The appellant indicated that, for financial reasons, he would be unable to accept a position outside the local commuting area. I-1 IAF, Tab 6 at 49, 53.

issued an initial decision affirming the removal. *Cousin v. Department of Homeland Security*, MSPB Docket No. DC-0752-13-0261-I-2, Initial Appeal File (I-2 IAF), Tab 12, Initial Decision (ID).

¶6    The appellant has filed a petition for review, disputing the administrative judge's finding that he was unfit for duty, Petition for Review (PFR) File, Tab 3 at 14-25, arguing that he recovered from any disqualifying condition during the pendency of his Board appeal, *id*. at 26-31, asserting that the agency committed disability discrimination, *id*. at 31-32, and claiming that the agency denied him due process, *id*. at 10-14.  The agency has filed a response.  PFR File, Tab 5.

The agency proved its charge of inability to perform.

¶7    Where an employee occupies a position with medical standards or physical requirements and the finding that he was unable to perform was based on medical history, the agency is required to show the following to establish a charge of inability to perform:  (1) the disabling condition itself is disqualifying; (2) its recurrence cannot be ruled out; and (3) the duties of the position are such that a recurrence would pose a reasonable probability of substantial harm.  *Sanders v. Department of Homeland Security*, 122 M.S.P.R. 144, ¶ 11 (2015); *see* 5 C.F.R. § 339.206.  The appellant argues on review that the agency failed to prove its charge because he does not suffer from a disabling condition.  PFR File, Tab 3 at 14-25.

¶8    As set forth above, three different doctors collaborated in the psychiatric portion of the appellant's fitness-for-duty examination:  Dr. Blanks, a psychiatrist, conducted a clinical interview, administered the MMPI-2, and issued a report on the appellant's fitness for duty; Dr. Frederick, a psychologist, reviewed and interpreted the appellant's answers to the MMPI-2; Dr. Prunier, a psychiatrist, evaluated the records and issued a separate report concurring with Dr. Blanks that the appellant was unfit for duty.  *Supra* ¶ 3; I-1 IAF, Tab 9 at 22-36.

¶9     The appellant presented independent evaluations by four other doctors, all of whom disagreed with the results of the fitness-for-duty examination. Dr. Tina Roemersma, a psychologist, conducted a suicide assessment that included a diagnostic interview, interviews of the appellant's former colleagues, a battery of tests, including the MMPI-2, and reviews of Drs. Blanks's and Prunier's reports. I-1 IAF, Tab 18 at 28. Dr. Roemersma issued a report finding that the appellant was not clinically depressed and that he did not present a danger to himself or others. *Id*. at 28-32. The appellant also was evaluated by Dr. Malika Seth, a psychiatrist. *Id*. at 33-37. After interviewing the appellant and reviewing his medical and psychiatric history, including Drs. Blanks's and Prunier's evaluations, Dr. Seth issued a report finding that the appellant did not meet the criteria for major depressive disorder, was not a danger to himself or others, and was fit for duty. *Id.* Dr. Fred Kerman, another psychologist, also evaluated the appellant. I-1 IAF, Tab 25. He based his evaluation on clinical interviews with the appellant, a battery of tests, including the MMPI-2, interviews with some of the appellant's coworkers, and a review of the appellant's medical and mental health records, including the reports by Drs. Blanks, Prunier, Roemersma, and Seth, as well as various background documents. *Id*. at 5. Dr. Kerman issued a report finding that the appellant did not suffer from any clinical psychological disorder, he was not a danger to himself or others, and he was fit for duty. *Id*. at 1-13. Finally, Dr. David Fischer, a psychiatrist, conducted an evaluation based on the appellant's position description, an interview with the appellant, an MMPI-2, and a review of all of the other doctors' reports. I-1 IAF, Tab 26 at 7-9, 23. Dr. Fischer issued a report finding that the appellant did not suffer from clinical depression, was not a danger to himself or others, and was fit for duty. *Id*. at 1-31.

¶10     After weighing all this evidence, the administrative judge credited the findings of Drs. Blanks and Prunier over the findings of Drs. Roemersma, Seth, Kerman, and Fischer largely because Drs. Blanks and Prunier based their

assessments on more accurate information.  ID at 12-23.  On review, the appellant argues extensively that the reports issued by Drs. Roemersma, Seth, Kerman, and Fischer are more reliable than the reports issued by Drs. Blanks and Prunier.[4] PFR File, Tab 3 at 14-25.

¶11    For the following reasons, we agree with the administrative judge.  All of the appellant's medical experts begin their assessments by relying on the appellant's version of events regarding his comments about suicide, i.e., he told his supervisor that it would have been better for him to contemplate suicide than to be transferred to his current duty station.  I-1 IAF, Tab 18 at 28, 33, Tab 25 at 1, 11, Tab 26 at 9-10, 29-30.  However, the administrative judge found the agency's version of events to be more credible, i.e., the appellant told his supervisor that he was actually contemplating suicide.  ID at 12-13.  The appellant has not challenged this finding on review, and we therefore find that he stated to his supervisor that he was actually contemplating suicide.[5]

¶12    Furthermore, there is a marked difference between the information that the appellant provided Dr. Blanks and the information that he provided the other four doctors.  The appellant painted a bleak picture before Dr. Blanks regarding his mood and situation in life.  The appellant related that he was anxious, sad most of the time, unable to concentrate, constantly worried about failure, sleeping poorly,

---

[4] Among other things, the appellant argues that Dr. Blanks improperly administered the MMPI-2 and that this affected the results of the examination.  PFR File, Tab 3 at 14-15. We need not reach the issue of whether Dr. Blanks improperly administered the MMPI-2.  Even assuming that he did, for the reasons explained below, the additional unrebutted evidence from Dr. Blanks's fitness-for-duty examination is sufficient to show that the appellant is unable to perform the duties of his position.

[5] We modify the administrative judge's credibility analysis to the extent that he improperly relied on the appellant's self-interest as a factor in deciding credibility.  ID at 12; *see Baldwin v. Department of Veterans Affairs*, 111 M.S.P.R. 586, ¶ 23 (2009). Nevertheless, we find the remaining credibility factors cited by the administrative judge sufficient to support his finding.  ID at 12-13; *see generally Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987) (listing the factors generally probative in making credibility findings).

and having feelings of worthlessness, decreased energy, and an increased appetite, with 30 pounds of weight gain in the previous 6 months. I-1 IAF, Tab 9 at 29, 33, 35. He further reported an unsatisfactory personal life in that he had no friends and lived alone, away from his wife and children in Columbia with no prospect of reuniting with them. *Id*. at 30, 33. He reported distress at his family situation. *Id*. He also stated that he had lost interest in activities that he used to find pleasurable and that, when he was not at work, he sat around his house. *Id*. The appellant further told Dr. Blanks that he was angry at the people in his workplace, hated his "mindless and mind-numbing job," and has fleeting thoughts that life would be better without him and that he was "not afraid to die" because "life is not that big a deal." *Id*. at 29, 31-33.

¶13      The above account is in marked contrast to the account that the appellant gave to Drs. Roemersma, Seth, Kerman, and Fischer. I-1 IAF, Tab 26 at 29 (noting the inconsistency between the statements that Dr. Blanks attributed to the appellant and the statements that the appellant made to Dr. Fischer). He told them, in varying degrees, that he was not sad but was instead fully functional and sleeping well, with no apathy, no feelings of guilt, no depression, good concentration, good self-esteem, and only occasional anxiety. I-1 IAF, Tab 25 at 9, Tab 26 at 10-11, 14, 19-20. He also reported that his appetite was normal, his energy was good, and his weight was stable. I-1 IAF, Tab 25 at 9, Tab 26 at 11, 20. The appellant further reported that he enjoyed participating in daily activities, including walking, riding his motorcycle, and doing volunteer work. I-1 IAF, Tab 25 at 9, 11, 13, 20, 35, Tab 26 at 11. He represented that he had a satisfactory social life that included spending time with friends, from whom he obtained strong emotional support. I-1 IAF, Tab 26 at 11, 24, 21, 36. He reported that his home life was pleasant and problem free, he was content with his family situation, and his family had plans to reunite in the United States. I-1 IAF, Tab 18 at 29, 34, Tab 26 at 12.

¶14  For the reasons explained in the initial decision, we agree with the administrative judge that these four doctors did not convincingly explain the discrepancies between the information that the appellant relayed to them and the information that he relayed to Dr. Blanks. ID at 10-15. Further, Dr. Fischer questioned the validity of the MMPI-2 that he administered because the appellant was unwilling or unable to disclose personal information, which could be explained as a conscious distortion to present himself in a favorable light. I-1 IAF, Tab 26 at 23. Whatever the reason for the discrepancy between the appellant's first clinical interview and his subsequent ones, the fact of the discrepancy leaves us doubting the validity of any of these assessments. We find that the appellant's self-report to Dr. Blanks that he had eight of the nine symptoms of major depressive disorder is sufficient to support a finding that he did, in fact, suffer from major depressive disorder.[6] I-1 IAF, Tab 9 at 34-35. Moreover, the appellant showed poor judgment with his comments about suicide and his attempts to resolve his predicament by giving wildly varying accounts of his mental health and personal situation during the various psychological evaluations. We agree with Drs. Blanks and Prunier that the appellant has demonstrated inability to use proper judgment and make quick decisions in law enforcement situations. *Id*. at 25, 35. The appellant's major depressive disorder and impairment in judgment are disqualifying conditions. I-1 IAF, Tab 6 at 248-29. Thus, the agency has proven the first element of its charge, i.e., the appellant suffers from a disqualifying condition. *See Sanders*, 122 M.S.P.R. 144, ¶ 11; 5 C.F.R. § 339.206.

¶15  Regarding the second element of the charge, i.e., the recurrence of the disqualifying condition cannot be ruled out, Dr. Blanks testified that he could not rule out the possibility that the appellant's depression would return in the future

---

[6] For a diagnosis of major depressive disorder, among other things, five of the nine symptoms must be present. Diagnostic and Statistical Manual of Mental Disorders, 356, 375 (4th ed. 2000).

and that the condition must be managed by the appellant.[7]  Hearing Transcript (HT), Day 1 at 114; *see Sanders*, 122 M.S.P.R. 144, ¶ 11; 5 C.F.R. § 339.206. Dr. Prunier testified that an individual who has previously had two episodes of major depressive disorder has an 80 percent likelihood of another recurrence. HT, Day 1 at 515.  He also stated that an individual who has had a single episode of depression has a 50 percent likelihood of another occurrence.  *Id.*  Dr. Prunier testified that the recurrence rate increases with each episode until it approaches a nearly 100 percent likelihood.  *Id.*  Therefore, based on this testimony, we find the agency proved the second element of the charge.

¶16  The third element of the charge is that the duties of the position were such that a recurrence of the disqualifying condition would pose a reasonable probability of substantial harm.  *Sanders*, 122 M.S.P.R. 144, ¶ 11; 5 C.F.R. § 339.206.  The medical requirements for the Customs and Border Protection Officer position require that the incumbent "must exercise sound judgment, maintain mental alertness at all times, and function under dynamic and stressful conditions in which there are time constraints, concerns for national security, and threats of terrorism."  I-1 IAF, Tab 6 at 218.  The position further requires an ability to make rapid decisions and be prepared to respond to unexpected and potentially threatening situations.  *Id.*  The position also requires working on a shift or rotational basis with substantial amounts of overtime.  *Id.* at 184.  The Board has previously found an employee unfit for a position based on testimony that it is "very demanding and stressful" and requires someone "to be on task and on target at all times, to be under good emotional control and to be stable" because the incumbent must carry a weapon.  *Sanders*, 122 M.S.P.R. 144, ¶¶ 16-17, 19.

¶17  Dr. Prunier found that the appellant's psychological condition led him to exhibit poor judgment and insight and that he was not able to safely, effectively,

---

[7] Although the appellant sought reassessment by four mental health professionals, there is no indication that he sought treatment for his conditions.

and efficiently perform independent decision making functions or assess national security implications. I-1 IAF, Tab 9 at 8. Given that the appellant's job requires him to always exercise sound judgment and maintain mental alertness and to be on task and on target at all times because of the weapons-carrying requirement, we find that the recurrence of the disqualifying condition would pose a reasonable probability of substantial harm. For these reasons, we agree with the administrative judge that the agency proved its charge: the appellant's condition is disqualifying, its recurrence cannot be ruled out, and the duties of his position were such that a recurrence would pose a reasonable probability of substantial harm. *See Sanders*, 122 M.S.P.R. 144, ¶ 11.

The appellant has not demonstrated that he recovered and should be reinstated to his position.

¶18        The administrative judge found that the appellant's post-removal medical evidence was not sufficient to prove that he had recovered from his psychological condition. ID at 15. If an appellant who was removed for inability to perform recovers during the pendency of his Board appeal, the removal no longer promotes the efficiency of the service and will not be sustained. *Morgan v. U.S. Postal Service*, 48 M.S.P.R. 607, 611-12 (1991); *Street v. Department of the Army*, 23 M.S.P.R. 335, 342-43 (1984). Such evidence of recovery must be clear and unambiguous. *Johnson v. U.S. Postal Service*, 120 M.S.P.R. 87, ¶ 8 (2013).

¶19        On review, the appellant renews his argument that, even if he did have a disabling condition, he subsequently recovered from the condition and is entitled to reinstatement. PFR File, Tab 3 at 30-31. In making this argument, the appellant appears to be relying on the medical evidence discussed above. *Id*. However, this evidence does no more to show that the appellant recovered from his disqualifying condition than it does to show that he did not suffer from such a

condition in the first place. We thus find that it does not constitute clear and unambiguous evidence of recovery.[8]

The appellant failed to prove his affirmative defense of disability discrimination.

¶20 The appellant argued below that the agency regarded him as disabled and committed disability discrimination by removing him based on his perceived disability. I-2 IAF, Tab 18 at 8-11, Tab 19 at 7-10. The administrative judge found that the appellant failed to prove his claim because he did not identify any comparator employees. ID at 18.

¶21 On review, the appellant argues that he was not required to identify any comparator employees because the agency's action was explicitly based on his perceived disability. PFR File, Tab 1 at 31-32. We agree. I-2 IAF, Tab 18 at 8-11; *see generally Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1209 (11th Cir. 2008) (noting three distinct theories of disability discrimination: disparate treatment, disparate impact, and failure to reasonably accommodate). A disparate treatment claim may be supported not only by evidence of comparator employees but by other evidence as well, including discriminatory statements by the employer. *Brown v. Department of the Interior*, 121 M.S.P.R. 205, ¶ 26 (2014). In this case, it is undisputed that the appellant's disability, real or perceived, was the underlying reason for his removal. I-1 IAF, Tab 6 at 17-18; *see Ellshoff v. Department of the Interior*, 76 M.S.P.R. 54, 79 (1997) (the agency's charge of inability to work due to depression constituted direct evidence of disability discrimination). Having been presented with this evidence, the administrative judge should not have denied the appellant's disability discrimination claim solely for lack of comparator evidence. ID at 18.

¶22 Because the agency in this case did not advance an independent, nondiscriminatory reason for the removal, the only remaining question is whether

---

[8] The appellant does not challenge the penalty determination on review, and, for the reasons explained in the initial decision, we agree with the administrative judge's decision to uphold the penalty. ID at 23-24.

the agency's admittedly discriminatory act was prohibited or permissible, i.e., whether the appellant was a "qualified" individual with a disability under 29 C.F.R. § 1630.2(m).[9]  *See Ellshoff*, 76 M.S.P.R. at 79.  The appellant is qualified if he can perform the essential functions of the Customs and Border Protection Officer position, or a position to which he might be reassigned, with or without reasonable accommodation.  *See Coates v. Department of the Navy*, 74 M.S.P.R. 362, 368 (1997); 29 C.F.R. § 1630.2(m).  For the reasons set forth above, we find that the appellant's psychological condition rendered him unable to perform the essential functions of the Customs and Boarder Protection Officer position without accommodation.  *Supra* ¶¶ 7-16.  Nor has the appellant articulated any accommodation that would allow him to perform in that position, given our finding that he does, in fact, suffer from a disqualifying condition.  As explained above, the parties engaged in the interactive process, and the agency located two positions to which it could have reassigned the appellant, but he declined the offer of reassignment.  *Supra* ¶ 4 & n.3; I-1 IAF, Tab 6 at 22, 28-29.  Because the appellant has not shown that he was a qualified individual with a disability, he has not proven his disability discrimination claim.  *See Henson v. U.S. Postal Service*, 110 M.S.P.R. 624, ¶ 7 (2009).

The agency did not violate the appellant's due process rights.

¶23    For a tenured public employee facing removal from his position, minimum due process requires prior notice and an opportunity to respond.  *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985).  Procedural due process guarantees are not met if the employee has notice of only certain charges or portions of the evidence and the deciding official considers new and material information.  *McNab v. Department of the Army*, 121 M.S.P.R. 661, ¶ 18 (2014).  Furthermore, to the extent there are viable alternatives to a proposed adverse

---

[9] Regardless of whether the appellant is actually disabled (as claimed by the agency) or merely perceived as such (as claimed by the appellant), he meets the definition of an individual with a disability.  *See* 29 C.F.R. § 1630.2(g)(1)(i), (iii).

action, due process requires that the employee be afforded an opportunity to invoke the discretion of a deciding official with the authority to select such alternatives. *Buelna v. Department of Homeland Security*, [121 M.S.P.R. 262](), ¶ 28 (2014). In this case, the administrative judge found no due process violation because the agency provided the appellant with all of documentation that the deciding official relied upon in making his decision, and the deciding official had the authority to determine whether to sustain the removal or to take alternative measures. ID at 22-23.

¶24    The appellant disagrees. On review, he argues that he was denied due process because the agency failed to provide him with all of the medical reports that the deciding official considered. PFR File, Tab 3 at 10; ID at 21-22 (addressing this argument below). Specifically, he alleges that neither he nor Dr. Roemersma received Dr. Frederick's report, the raw MMPI-2 data underlying Dr. Frederick's report, or a September 7, 2012 letter from Dr. Prunier clarifying his earlier letters. PFR File, Tab 3 at 10-11. Regarding Dr. Prunier's September 7, 2012 letter, the record contains a facsimile confirmation page reflecting successful transmission of this document to Dr. Roemersma on September 19, 2012.[10] I-1 IAF, Tab 9 at 2. We therefore find that the agency provided Dr. Roemersma with this document. Regarding the raw MMPI-2 data and Dr. Frederick's interpretation of that data, there is no evidence that the deciding official himself ever received these documents or considered them as part of his decision. Rather, it appears that the MMPI-2 data and Dr. Frederick's interpretation of that data never left the possession of Dr. Blanks, who used this information to write his report. I-1 IAF, Tab 9 at 4, 28. The appellant has not demonstrated that due process requires him to be privy not only to the

_____

[10] A comparison of that confirmation page with another confirmation page reflecting a successful facsimile transmission on August 10, 2012, to the same number reassures us that Dr. Roemersma did, in fact, receive Dr. Prunier's September 7, 2012 letter. I-1 IAF, Tab 9 at 9. The appellant does not allege that Dr. Roemersma failed to receive the August 10, 2012 facsimile.

information that the deciding official relied upon in making his decision, but also to the data that went into formulating that information. In any event, the record contains no evidence that the appellant ever requested these documents either before or after his removal. Therefore, we find that the agency did not violate the appellant's due process rights. *See McNab*, 121 M.S.P.R. 661, ¶¶ 16-18 (finding no due process violation or harmful error because the appellant did not request the materials underlying his removal).

¶25 The appellant also argues that the deciding official had no meaningful authority to affect the outcome of the removal proceedings. PFR File, Tab 3 at 12-14. He argues that the deciding official felt compelled to defer to Dr. Prunier's findings and that his role was essentially reduced to implementing Dr. Prunier's recommendation notwithstanding the contrary medical evidence that the appellant presented to him. *Id*.

¶26 However, we agree with the administrative judge that the deciding official's authority was not limited to rubberstamping the proposal notice and that the deciding official recognized his role. ID at 20. There is no evidence that the deciding official lacked authority, or believed that he lacked authority, to implement a lesser sanction or even not to sustain the charge, if he deemed it appropriate. In fact, the deciding official actually offered the appellant a transfer to another position in lieu of removal. I-1 IAF, Tab 6 at 28-29. The deciding official also testified that, although he gave Dr. Prunier's evaluation greater weight, he personally reviewed and considered the subsequent evaluations provided by the appellant. HT, Day 2 at 83-84. In short, the evidence in this case does not support a finding that removal in accordance with the proposal notice was a foregone conclusion.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 77960
> Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

> Office of Federal Operations
> Equal Employment Opportunity Commission
> 131 M Street, NE
> Suite 5SW12G
> Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with

the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:           _____
                                         William D. Spencer
                                         Clerk of the Board

Washington, D.C.